UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL A. RUNION,

        Plaintiff,

v.

BANK ONE CORPORATION and BANK
ONE SECURITIES CORPORATION,

        Defendants.

_____/

Case No. 05-71520

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS' MOTION SUMMARY JUDGMENT [20]**

This case arises out of Plaintiff Daniel Runion's employment with Defendant Bank One Securities Corporation ("Bank One Securities"). Plaintiff's complaint alleges that Defendants discriminated against him because of his age and constructively discharged him in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2202(1)(a). This matter is presently before the Court on Defendants' motion for summary judgment. Defendants' motion is GRANTED.

As to Defendant Bank One Corporation, there is no evidence that this Defendant was Plaintiff's employer at the time he alleges he was discriminated against and constructively discharged. As to Defendant Bank One Securities, Plaintiff has not shown that he suffered an adverse employment action or that Bank One Securities' legitimate, nondiscriminatory business reason for its challenged employment action was a pretext for age discrimination.

I.    **Facts**

Plaintiff went to work for NBD Bank, N.A. in 1997.  (Compl. ¶ 11.)  When NBD was acquired by Bank One Corporation, he became an at-will employee of its subsidiary, Bank One Securities.  (Def.'s Ex. A, Pl.'s Dep. at 184-87.)  Plaintiff is not an employee of Bank One Corporation ("Bank One").

While employed at Bank One Securities, Plaintiff was responsible for selling investment products to Bank One customers.  Bank One employees, known as "personal bankers" or "relationship bankers," would refer their customers to Plaintiff, a licensed investment sales representative for Bank One Securities.  (Pl.'s Dep. 75-87.)  In May or June of 2000, he was assigned to Bank One's Biddle-Eureka branch in Wyandotte, Michigan, selling securities from an office located inside that branch office.  (Pl.'s Dep. at 75.)   Even though Plaintiff worked out of a branch office owned and operated by Bank One, the Bank One branch manager had no hiring or firing authority over him.  Rather, a Bank One Securities' manager had that authority.  (Def.'s Ex. B, K. Hamovitz Dep. at 17-20; Pl.'s Dep. at 75-82, 86-87.)

Plaintiff eventually acquired the status of "Team Leader" at the Biddle-Eureka branch. As a Team Leader for Bank One Securities, Plaintiff was to attend appointments jointly with personal bankers and Bank One customers.  Although the Bank One personal bankers were not Plaintiff's subordinates, he was to work with their immediate supervisor, the branch manager, to motivate, coach and educate them on Bank One Securities' investment products.  (Hamovitz Dep. at 20.)  Plaintiff's compensation depended in part on how well the relationship bankers performed in their sales efforts.  (Defs.' Ex. C, R. Sherwin Dep. at 20.) He made money off their efforts.  (*Id.* at 21.)  Plaintiff's working relationship with these

2

personal bankers and the branch manager was important to Bank One Securities' goal of increased sales of investment products.  (*Id.* at 20-22.)

Plaintiff reported to a Bank One Securities area manager in charge of investment representatives.  Erin Shaw was Plaintiff's area manager from July 2003 through May or June 2004.  After that, Rita Sherwin became his area manager.  (Sherwin Dep. at 9, Defs.' Ex. B, K. Hamovitz Dep. at 22.)  Plaintiff's immediate supervisor and the branch manager of the Biddle-Eureka branch where Plaintiff was located would regularly meet to discuss investment goals and how sales could be improved.  (Hamovitz Dep. at 22-24.)  Both Shaw and Sherwin received complaints about Plaintiff.

In January 2004, Plaintiff's supervisor at the time, Erin Shaw met with Plaintiff to discuss concerns regarding his performance and his relationship with Bank One branch employees, including Cathy Szyndlar, the Biddle-Eureka branch manager at that time. (Pl.'s Dep. at 114-117.)   Ms. Shaw discussed these concerns with Plaintiff, including missed production goals, excess vacation time, and complaints from personal bankers that Plaintiff was not providing the assistance required in his role as "Team Leader." (*Id.* at 117-119.)

Plaintiff's subsequent supervisor, Rita Sherwin, also heard complaints that Plaintiff was not pulling his own weight, was not seeing enough people on his own, was relying solely on the personal bankers' appointments to get investment sales, was spending a lot of time on non-business related issues, was leaving the branch without letting anyone know where he was going, or was leaving the branch for "business-related" reasons that never resulted in increased investment sales.  (Sherwin Dep. at 25-26.)   Kristen Hamovitz, manager of the Biddle-Eureka branch, complained to Plaintiff's supervisor that Plaintiff was

3

not very aggressive in getting new clients into the bank or setting appointments, that his relationship with the branch's personal bankers was diminishing, and that he was conducting business on his personal rental properties while at the branch office.  (*Id.* at 24, 26-32, 37-38, 42-45.)

In Fall 2004, Ms. Sherwin visited the Biddle-Eureka branch with a Bank One Securities national sales manager, Andy Ireland.  These two first met with Plaintiff and then met with the branch manager, Kristen Hamovitz.  Ms. Hamovitz told them that Plaintiff was not pulling his weight, that he was "living off the fat of the land," and that morale at the branch was low.  (Hamovitz Dep. at 27-28; Pl.'s Dep. at 199-209.)

After that meeting, Ms. Sherwin knew she needed to make a change.  (Sherwin Dep. at 28.)  She had a conference call with a regional manager, and they tried to come up with some alternatives for Plaintiff in light of the fact that Bank One Securities wanted to keep Plaintiff because they felt he was a good producer but could not ignore the fact that the Bank One branch wanted him out -- the "branch has fired him, they don't want him there anymore." (Sherwin Dep. at 32.)  It was not just the branch manager, but all of the people who worked at that branch that did not want Plaintiff working there anymore.  (Sherwin Dep. at 35-36.)

Concerns about Plaintiff's performance came to a head in October 2004.  Around October 7, 2004, there was a meeting between Plaintiff, Rita Sherwin, Patrick Blume (Ms. Sherwin's supervisor), and the new area manager for Bank One Securities.  (Pl.'s Dep. at 155-56.)  The Bank One branch manager, Kristen Hamovitz, was not at this meeting.  (*Id.* at 172.)  Plaintiff testified that Ms. Sherwin told him that the branch was "firing him," that Plaintiff was not working well with people at the Bank One branch, and that Bank One

4

Securities was offering him the option of becoming an independent sales representative, working with his current $31 million book of business without the assistance of the Bank One relationship bankers.  (Pl.'s Dep. at 158; Sherwin Dep. at 33-34.)  Ms. Sherwin testified that this option would allow Plaintiff to make more money because the pay-out structure was higher for an independent advisor than for a Team Leader working in a branch environment.  (Sherwin Dep. at 34.)

At this meeting, Plaintiff responded that he wanted to be a Team Leader.  When asked if there was any other place that he could go, he was told "no, not at this time."  (Pl.'s Dep. at 158, 165-66, 198.)  Plaintiff testified that he was told that if he did not take the offer that "there would be a parting of the ways." (Pl.'s Dep. at 157, 170-71, 198.)  After the meeting, Plaintiff called Ms. Sherwin and left her a voice message that he was disturbed and was taking the rest of the afternoon off.  (*Id.* at 173.)

Plaintiff was concerned that if he was forced to become an independent investment representative for Bank One Securities he would no longer receive commissions on investment products sold by the Bank One branch's personal bankers.  One of the benefits of being a Team Leader was his ability to get a portion of what someone else produced. (*Id.* at 166-69.)  Plaintiff went home that night and crunched numbers to find out what he would earn as an independent Bank One Securities representative and concluded that he would make half of his current pay or less.  (*Id.* at 169, 174-75.)  He called his supervisor, Ms. Sherwin, either that same night or the next day and left her a message that he was taking a personal day on Friday to think about Bank One Securities' offer.  (*Id.* 175-77.) Plaintiff also called an attorney.  (*Id.* at 177.)

5

Plaintiff returned to work on Monday and spoke with his supervisor, Ms. Sherwin. He informed her that he was turning down the Bank One Securities' offer because he believed he would make less money, and told her that he wanted to stay on as a Team Leader at the Biddle-Eureka Bank One branch office where he was currently located. (*Id.* at 179.) Ms. Sherwin said she did not think that was possible, but told Plaintiff to come to her office on October 13, 2004 for a meeting. (*Id.* at 180.)

On October 13, 2004, Plaintiff met with Ms. Sherwin at her office in Wayne, Michigan. (*Id.* at 180-81.) At that meeting Ms. Sherwin handed Plaintiff a Written Counseling, advising him that he could continue as a Team Leader, but she would monitor his performance closely for the next 30 days. Specifically, the Written Counseling provided that:

> your work performance is at an unacceptable level. Specifically, the sales from your existing book are only contributing 25% toward the success of the banking center, which is unacceptable.
>
> Your performance was previously discussed on 1/23/2004 with Erin Shaw, former Area Manager. At that time, the applicable performance standards and the steps you needed to take to improve your performance were identified. A time frame for improvement was established and performance expectations were set. To date, you have not made satisfactory improvement.
>
> As you know, I've spoken to you several times regarding the communication and relationship with your branch manager. Unfortunately, Dan, you've failed to take proactive measures to improve the situation and have allowed it to deteriorate further. This is something you must begin repairing immediately or else it will have a huge impact on your continued success as a Team Leader.
>
> You are expected to adhere to the standards of BANK ONE and your work unit as previously identified. Specifically you must:
>
> 1.    Achieve a minimum of $20,000 gross commissions monthly.

2. Conduct a minimum of 20 appointments per week that are set by you and run by you. Joint appointments are acceptable if above and beyond your 20 appointments.

3. Improve personal production from your existing book to 50% from the 25% it is today.

4. Work the stated branch hours of 9am – 5pm M-F, plus 2 Saturdays per month from 9am – 1pm. No exceptions. Do not leave early without clearing through me.

5. While you are at work, you need to be conducting bank business, not personal business.

6. Repair relationships with branch staff and reinstitute integration strategies. You are to debrief with the relationship bankers at the end of each day and at least once per week with the bank manager. Other recommended behaviors include quick starts, educational meetings with bankers and staff, joint appointments with bankers, etc.

7. Arrive to all Retail bank meetings on time and actively participate by providing some product knowledge or an investment update.

8. Participate in a minimum of one call night per week in order to schedule appointments for following week.

7. [sic] By 5:00 each day fax or email the Daily Sales and Tracking report to my office for review.

I will review your performance closely during the next 30 days. You will be expected to bring your performance to a satisfactory level within that time frame and you must maintain satisfactory performance in the future.

If you fail to improve your performance, or if there are any policy/procedure violations, you will be subject to further disciplinary action up to and including termination of employment.

(Defs.' Ex. E, 10/12/04 Written Counseling.) Plaintiff refused to sign the document, and

resigned from Bank One Securities that same day. (*Id.*; Pl.'s Dep. at 190.) His written

resignation letter to Bank One Securities states that he could "no longer take the stress of

unreasonable demands" and felt that the "30 day or out notice" made him feel unwanted.

(Defs.' Ex. F, 10/13/04 resignation addressed to Bank One Securities Corp.) Plaintiff was

47 years old on this date. (Compl. ¶ 47.)

    Plaintiff filed this age discrimination case the next day, October 14, 2004, alleging that

the "written counseling" was an adverse employment action, that it was motivated by age

discrimination, and that the restrictions in that document constituted a constructive discharge. (Compl. ¶¶ 7, 10, 16.) Plaintiff's position was filled by Sampson Park, age 28. (Hamovitz Dep. at 18.)

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

8

### III. Analysis

This matter is presently before the Court on Defendants' motion for summary judgment. Plaintiff brings his age discrimination claim under Michigan's Elliott-Larsen Civil Rights Act, arguing that he was offered the independent investment representative position and the written counseling because of his age. He further argues that these two acts, taken together, constitute an adverse employment decision and a constructive discharge. Defendants argue that Plaintiff cannot prove his Michigan ELCRA claim of age discrimination because he cannot show that he suffered an adverse employment action or that Bank One Securities' articulated business reasons for issuing the written counseling were a pretext for age discrimination. This Court agrees.

Michigan courts look to federal law for guidance when reviewing claims of age discrimination based on that state's laws. *Featherly v. Teledyne Indus., Inc.*, 486 N.W.2d 361, 364 (Mich. Ct. App. 1992). Plaintiff has the burden of establishing a prima facie case of age discrimination. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). He can meet this burden either by presenting direct evidence that Bank One Securities intentionally discriminated against him because of his age or by presenting circumstantial evidence, following the *McDonnell Douglas* burden-shifting analysis. *Graham v. Ford*, 604 N.W.2d 713, 717 (Mich. Ct. App. 1999). Plaintiff argues that he has both direct and circumstantial evidence of age discrimination. Under either approach, Plaintiff must establish "a causal link between the discriminatory animus and the adverse employment decision." *Sniecinski v. Blue Cross & Blue Shield of Michigan*, 666 N.W.2d 186, 193 (Mich. 2003). Thus, the Court first examines the conduct Plaintiff claims constitutes an adverse employment action.

9

## A.  Adverse Employment Action

The Michigan courts have defined an adverse employment action as one that is materially adverse.  This requires that it be "more than mere inconvenience or an alteration of job responsibilities," and that "there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another [are] not controlling."  *Pena v. Ingham County Road Comm'n*, 660 N.W.2d 351, 358 (Mich. Ct. App. 2003) (internal quotes and citations omitted).  "In determining the existence of an adverse employment action, courts must keep in mind the fact that work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."  *Id.* at 358-59 (internal quotes and citation omitted).

Plaintiff argues here that, taken together, Bank One Securities' offer to him of the independent representative position rather than Team Leader and the written counseling he received after refusing this offer constitute an adverse employment decision.  Plaintiff contends that he would make less money if he accepted the independent representative offer and further contends that the conditions set out in the written counseling for continuing employment as a Team Leader were so unreasonable and punitive as to constitute a constructive discharge.  Plaintiff's arguments are without merit.

Plaintiff's reliance on a decision from the Eleventh Circuit Court of Appeals, *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232 (11th Cir. 2001), is misplaced.  That decision evaluated a race discrimination claim brought under Title VII and held that a written counseling memorandum, similar to that issued here, was not an actionable adverse

10

employment action because the plaintiff "did not suffer any tangible consequence from this memo, in the form of a loss of pay or benefits or further discipline." *Id.* at 1240. The *Davis* Court further observed that "the employee's subjective view of the significance and adversity of the employment action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239. It concluded that, because the plaintiff suffered no economic injury, the written counseling memoranda placed in his file and the changes in his work assignments, did not constitute adverse employment actions. This was true despite the plaintiff's arguments that the negative job performance memoranda placed in his file were "unwarranted, diminished his prestige and self-esteem, and potentially may interfere with (unspecified and unexplored) future job prospects." *Id.* at 1240. The court concluded that "Congress simply did not intend for Title VII to be implicated where so comparatively little is at stake." *Id.*

Plaintiff does not present the Court with Michigan case law that would reach a contrary conclusion. Plaintiff speculates that his wages "could be" cut in half if he had accepted Bank One Securities' offer to be an independent sales representative rather than remain as a team leader at the Biddle-Eureka branch. (Pl.'s Resp. at 8.) Other than his deposition testimony that he crunched some numbers, Plaintiff offers no objective proof for this claim. His argument also ignores the fact that he was not forced to accept that position. The undisputed evidence is that Bank One Securities allowed him to remain as Team Leader at the Biddle-Eureka branch, albeit with increased scrutiny from his immediate supervisor. Plaintiff does not argue that he would suffer a loss of pay or benefits or further discipline if he abided by the terms set out by his supervisor in the written counseling. His principal concern is that he felt he was being set up for failure. Plaintiff's

11

"subjective perception that he was adversely affected" because of the written counseling "does not rise to the level of an objectively verifiable employment action." *Pena*, 660 N.W.2d at 360.

Plaintiff's claim that, the offer together with the conditions set forth in the written counseling, constitute a constructive discharge is likewise without merit. To establish a claim of constructive discharge, an employee must show that his employer deliberately made his working conditions "so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." *Vagts v. Perry Drug Stores, Inc.*, 516 N.W.2d 102, 105 (Mich. Ct. App. 1994) (internal quote and citation omitted). Plaintiff has not persuaded the Court that reasonable person in his shoes would feel compelled to resign when faced with the conditions set forth in his written counseling.

In sum, Plaintiff cannot show that he suffered an adverse employment action. As discussed below, Plaintiff also fails to present direct or circumstantial evidence showing that Bank One Securities intentionally discriminated against him because of his age.  **B** **.**

**Intentional Age Discrimination**

Plaintiff can prove that Bank One Securities intentionally discriminated against him because of his age by presenting either direct or circumstantial evidence. The Court first examines his proffered "direct evidence."

**1.  Direct Evidence**

If Plaintiff presents direct evidence of discrimination, there is no need for the Court to "go through the *McDonnell Douglas* burden-shifting analysis." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836, 838 (Mich. 2001). "Direct evidence is evidence that proves the existence of a fact without requiring inferences." *Rowan*, 360 F.3d at 548. Despite his arguments to the contrary, Plaintiff he has not come forward with any "direct evidence" that he was terminated because of his age.

### a. Overheard Comment by Karen Hamovitz

The Court first addresses a comment allegedly made by the Bank One branch manager, Karen Hamovitz. Plaintiff, in his deposition, testified that, about a week before he left his job, a co-worker, Robert Curtis, was in the lunchroom and overheard Karen Hamovitz remark about another team leader who "was doing real well just starting out and he was younger, and maybe they needed some new blood in the bank." (Pl.'s Dep. at 50.) This proffered evidence fails for several reasons. First, Ms. Hamovitz was employed by Bank One and was not Plaintiff's supervisor. Second, this comment was not made in connection with the employment actions Plaintiff challenges -- Bank One Securities' offer to him to work as an independent representative and the written counseling. More importantly, inferences must be drawn to arrive at Plaintiff's conclusion that alleged age bias on the part of a Bank One employee also motivated the decision makers at his employer, Bank One Securities. Because it requires inferences to be drawn, this overheard statement is not, by definition, direct evidence. It also constitutes inadmissible hearsay and thus cannot be used to defeat Defendants' motion for summary judgment. *See North Am. Ins. Specialty Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).

13

It is undisputed that Ms. Hamovitz worked for Bank One, while Plaintiff worked for a separate corporate entity, Bank One Securities.  (Pl.'s Resp. at 8, Ex. 7, paycheck from Bank One Securities.)  While Plaintiff and Ms. Hamovitz, like many Bank One and Bank One Securities employees, worked together to accomplish goals set by their respective corporate entities, it is undisputed that Ms. Hamovitz did not have the authority to "fire" Plaintiff from his job at Bank One Securities.  Accordingly, while she may have influenced the decision makers at Bank One Securities, she was not herself a decision maker at the entity where Plaintiff worked.  "[S]tatements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus." *Rowan*, 360 F.3d at 550 (internal quote marks and citation omitted).  Plaintiff's supervisor at Bank One Securities, Rita Sherwin, had authority over Runion's employment, not Hamovitz.

### b. McGonogale Testimony

The Court now addresses Plaintiff's proffered testimony by John McGonogale, which Plaintiff presents as direct evidence that Bank One Securities had a policy of removing older employees from the position of Team Leader and replacing them with younger employees.  Plaintiff does not point the Court to any specific testimony by Mr. McGonogale.  Rather, he cites generally the bulk of Mr. McGonogale's deposition testimony (pages 24-103 out of a 140 page deposition).  This proffered evidence fails for several reasons.

First, as Plaintiff admits, Mr. McGonogale was not employed by Bank One Securities at the time Plaintiff left his employment there, he was not involved in the employment decisions Plaintiff challenges, and he cannot testify as to the reasons Plaintiff was offered the option to work as an independent investment representative for Bank One Securities

14

or why his immediate supervisor gave him a written counseling on October 13, 2004.  (Pl.'s Resp. at 9.)

Second, if this testimony were considered, it would require inferences to arrive at the conclusion Plaintiff urges and thus does not fit the definition of direct evidence.  More importantly, examination of Mr. McGonogale's testimony fails to show any policy by Bank One Securities to discriminate against employees because of their age.  Rather, it reveals that Mr. McGonogale's conclusion that such a policy exists is based on nothing more than inadmissible hearsay and speculation.  Looking past the insurmountable hearsay obstacles presented in Mr. McGonogale's testimony, it is evident that his conclusion is based on pure speculation.  When questioned, Mr. McGonogale repeatedly testified that, although former Bank One employees may not have told him directly that they were let go because of their age, it was his "impression" and "belief" that that was true.  (Pls.' Ex. 8, McGonogale Dep. at 31, 33-34, 37-39, 41-43, 46-48, 50-51, 53-54, 55-57, 58-61, 62-63, 65-68, 70-71, 71-72, 73-74, 76-78, 79-80, 81-82, 88-89, 92-95, 100-101.)  Mr. McGonogale admitted that his impressions about a company policy of age-bias were "based on rumor, conjecture" and that he could not "say it was based on files, facts or anything else, but it was a pattern that seemed to be emerging."  (McGonogale Dep. at 88-89.)

Plaintiff has not presented any admissible, direct evidence that he was subject to an adverse employment decision because of his age.  The Court now considers his circumstantial evidence of age discrimination.

### 2.  Circumstantial Evidence

15

Plaintiff alternatively argues that he has circumstantial evidence of age discrimination. "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003.) Because Plaintiff is attempting to establish his age discrimination claim with circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), is applied. *Rowan*, 360 F.3d at 547.

The *McDonnell Douglas* burden-shifting framework consists of three stages. Plaintiff must "first establish a prima facie case of age discrimination." *Rowan*, 360 F.3d at 547. To establish a prima facie case of age discrimination, Plaintiff must prove that he: (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was replaced by a younger person. *Lytle v. Malady*, 579 N.W.2d 906, 916 (Mich. 1998).

Once that is done, the burden shifts to Bank One Securities, "who must give legitimate, non-discriminatory reasons for the adverse employment decision." *Id.* After Bank One Securities satisfies this burden of production, Plaintiff must "establish that the legitimate reasons offered by [Bank One Securities] were just a pretext for decisions actually motivated by an unlawful bias against age." *Id.* Plaintiff can do this by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate Bank One Securities' challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which

16

the jury could reasonably reject [the defendant's] explanation and infer that the defendant[] intentionally discriminated against him."  *Id.* (internal quotes and citation omitted).

Bank One Securities argues that, even if Plaintiff presents evidence showing that he suffered an adverse employment action, he cannot meet his burden of showing that the legitimate reasons provided by Bank One Securities for the challenged employment actions were a pretext for age discrimination.  This Court agrees.

Contrary to Plaintiff's arguments here, Bank One Securities has presented evidence supporting the legitimate, non-discriminatory reasons given for the employment actions Plaintiff challenges.  Deposition testimony from Plaintiff, his immediate supervisor, Ms. Sherwin, and from the Biddle-Eureka branch manager shows that there were complaints about Plaintiff's ability to fulfill the requirements of a Team Leader; i.e., that his relationship with the personal bankers had diminished, that he was not doing enough work on his own to bring in new customers for Bank One Securities' investment products, that he was conducting personal business during working hours, and that he was not accounting for all time spent out of the office.  These are the reasons articulated by Bank One Securities for both its decision to offer Plaintiff the position of independent investment representative and, when he turned that down, the decision to issue a written counseling that allowed him to remain as a Team Leader at the Biddle-Eureka branch location but with his supervisor, Rita Sherwin, monitoring his performance to correct the identified problems.

Because Bank One Securities satisfied its burden of showing that it had legitimate, non-discriminatory reasons for the employment actions Plaintiff challenges, the burden of production now returns to Plaintiff.  Plaintiff is required "to show the existence of evidence sufficient to permit a reasonable trier of fact to conclude that discrimination was a

motivating factor for the adverse action taken by the employer toward the plaintiff." *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 526 (Mich. 2001) (internal quotation and citation omitted). Plaintiff fails to meet that burden here.

To prove pretext and intentional age discrimination, Plaintiff "must directly confront the asserted justification" for his employer's actions. *Rowan*, 360 F.3d at 550. Plaintiff first attempts to show pretext with the inadmissible hearsay evidence about an overhead comment by Branch Manager Karen Hamovitz. This attempt fails for all the reasons discussed above. He next attempts to show pretext by presenting evidence that Bank One Securities considered him a good producer. This argument, however, misses the mark. It is not disputed that Bank One Securities recognized that Plaintiff was a good producer. The challenged employment actions arose from complaints that Plaintiff was unable to work in the branch environment in a way that allowed Bank One Securities to maximize its sales goals with Bank One customers. Plaintiff does not present evidence showing that these complaints did not exist. His personal beliefs that his work habits did not hinder Bank One Securities' business goals are insufficient. As observed by the Sixth Circuit, "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination." *Wexler*, 317 F.3d at 584 (internal quotes and citation omitted). Moreover, as observed by the Michigan Supreme Court, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Hazel,* 628 N.W.2d at 527 (internal quotes and citation omitted).

## IV.  Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is GRANTED.


                    s/Nancy G. Edmunds_____
                    Nancy G. Edmunds
                    United States District Judge

Dated:  April 10, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 10, 2006, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer_____
                    Case Manager